NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**FRANKLYN E. MORRISON,**
*Claimant-Appellant,*

**v.**

**Eric K. Shinseki, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2012-7109

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 09-4268, Judge William A. Moorman.

---

Decided: April 26, 2013

---

BARBARA J. COOK, Attorney at Law, of Cincinnati, Ohio, argued for claimant-appellant.

BARBARA E. THOMAS, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON,

Director, and MARTIN F. HOCKEY, JR., Assistant Director. Of counsel on the brief MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and AMANDA BLACKMON, Attorney, United States Department of Veterans Affairs, of Washington, DC.

———————

Before O'MALLEY, BRYSON, and REYNA, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* BRYSON. Dissenting opinion filed by *Circuit Judge* REYNA.

BRYSON, *Circuit Judge.*

Franklyn Morrison appeals from a decision of the Court of Appeals for Veterans Claims ("CAVC"). The court upheld a ruling by the Board of Veterans' Appeals denying Mr. Morrison's request for an earlier effective date for disability benefits he is receiving from the Department of Veterans Affairs ("DVA"). We affirm.

I

Mr. Morrison, a former member of the United States Marine Corps, sought disability benefits for post-concussion syndrome stemming from an in-service injury. In 1979, a regional office of the Veterans Administration (as the DVA was then called) awarded him service connection for his disability and rated the degree of his disability at 100 percent. The regional office, however, found "no evidence of psychiatric disease," noted that "[n]o seizure activity ha[d] been observed," and informed Mr. Morrison that he would be required to appear for a re-examination in 1981 to determine if his condition had improved.

In early 1981, the Veterans Administration scheduled a follow-up physical examination, first for May and then for July. Mr. Morrison failed to report for either examina-

tion.  In July 1981, Mr. Morrison informed the Veterans Administration that he would be attending school in Fairbanks, Alaska.  In September, therefore, the regional office notified him that another physical examination would be scheduled in December 1981, this time in Alaska.  Mr. Morrison again did not appear at the designated time.  Later that month, the regional office advised Mr. Morrison that because he had failed to appear for the scheduled medical appointments, his disability benefits would be discontinued.  Payments were stopped as of January 1, 1982.

In early 1982, the Veterans Administration received a communication from Mr. Morrison.  Although the letter was signed and dated August 24, 1981, date stamps on that document reflect that it was not received by the VA until January or early February of 1982.  Accordingly, the Board and the CAVC refer to that letter as the February 1982 letter.  In that letter, Mr. Morrison stated that he was responding to the notice to appear for a physical examination on July 31, 1981.  He claimed that he had not received the notice until August 19, 1981.  He stated that he wanted to re-schedule his physical examination, and he urged that his compensation not be discontinued.

The regional office treated the February 1982 letter as a request by Mr. Morrison to reopen his case, and it conducted a physical examination in March 1982.  Following that examination, the regional office determined that Mr. Morrison's condition no longer warranted disability compensation, and it assigned him a rating of zero percent, effective January 1, 1982.  Mr. Morrison filed a notice of disagreement.  As a result, he received a second re-examination the following year.  Following that examination, the regional office increased his rating to 10 percent, retroactive to the same January 1, 1982, date on which his disability payments had been discontinued.

Mr. Morrison appealed that determination to the Board of Veterans' Appeals, seeking an increased rating for his post-concussive disability to at least 50 percent. The Board denied his request in December 1984. Noting the absence of a diagnosis of nonpsychotic organic brain syndrome, and applying the rating schedule designated for "brain disease due to trauma with purely subjective complaints," the Board upheld the 10 percent rating.

In 1997, the DVA reopened Mr. Morrison's case. After determining that he was suffering from a condition similar to a major seizure disorder, the regional office increased his rating to 100 percent. Following that action, Mr. Morrison sought to have the 100 percent rating applied retroactively to 1982. Mr. Morrison first asked the Board to do so in 1997, but the Board denied that request and made his 100 percent rating effective as of January 5, 1996, the date he moved to reopen his claim.

In 2007, Mr. Morrison returned to the Board and filed a motion contending that the Board's 1984 decision contained clear and unmistakable error ("CUE"). He predicated his argument on an assertion that the Board had improperly weighed the evidence before it in 1984. After an adverse ruling by the Board and an appeal to the CAVC, the case was remanded to the Board pursuant to a joint motion for remand. The parties agreed that Mr. Morrison would abandon the CUE theory addressed by the Board but could present an argument that the 1984 Board had committed CUE when it failed to apply 38 C.F.R. § 3.343(a), which provided that a veteran's disability rating would not be reduced from 100 percent without a physical examination showing material improvement.

The Board rejected that argument in 2008 on the ground that section 3.343 was not applicable to a veteran whose disability compensation had already been discontinued for failure to report for a physical re-examination. Mr. Morrison again appealed to the CAVC, and the court

again remanded the case to the Board pursuant to another joint motion for remand. This time, the parties agreed that the Board should consider whether Mr. Morrison had an "adequate reason" for not reporting for the re-examinations scheduled by the Veterans Administration in 1981, as contemplated by the regulation governing discontinued payments, 38 C.F.R. § 3.655.

In a 2009 decision, the Board once more denied Mr. Morrison's CUE claim. On the merits, it ruled that Mr. Morrison had failed to provide an adequate reason for failing to appear for the December 1981 physical examination. In addition, the Board rejected Mr. Morrison's argument that the 1984 Board had erred by declining to review the 1981 decision to discontinue his benefits for failure to report. The 2009 Board explained that the 1984 Board was reviewing Mr. Morrison's challenge to his 10 percent rating; his complaint that the regional office's December 1981 decision lacked an "adequate reason" finding under section 3.655 "was not properly before the Board" at that time.

Mr. Morrison again appealed to the CAVC. He argued (1) that his letter dated August 24, 1981, constituted a notice of disagreement with the January 1, 1982, discontinuance of his benefits, (2) that the Board in 1984 should have reversed the decision to discontinue his benefits in January 1982 because there had been no explicit finding that he lacked an adequate reason for failing to report for his physical examination, (3) that he had such a reason, and (4) that the Board was required to determine whether he had such a reason before affirming his 10 percent disability rating in 1984.

The CAVC rejected each of those arguments. First, it found that Mr. Morrison had not filed a notice of disagreement with the December 1981 decision to discontinue his benefits, and thus the Board in 1984 was not required to address his complaints about that decision. Second,

the court ruled that even if Mr. Morrison had perfected an appeal from that decision, the governing regulation, 38 C.F.R. § 3.655 (as in effect between 1981 and 1984), did not require the Veterans Administration to make an express finding that Mr. Morrison lacked an adequate reason for missing his physical examination appointments. Finally, the court held that even if such a finding were needed, the record did not support his claim that the Board would have had to find that he had an adequate reason for missing his appointments. Accordingly, the court held that Mr. Morrison had failed to show that the 1984 Board decision contained CUE.

## II

In his appeal to this court, Mr. Morrison returns to the two issues on which his case was previously remanded from the CAVC to the Board. In particular, he argues that the CAVC misinterpreted DVA regulations in two respects: first, by applying the regulation governing discontinuances of benefits (38 C.F.R. § 3.655), it failed to make an explicit finding, based on evidence, that there was no adequate reason for Mr. Morrison's failure to appear for his scheduled physical examinations; and second, by failing to apply the regulation governing reductions in ratings (38 C.F.R. § 3.343) when it reduced his rating from 100 percent to zero percent in 1982 without a prior physical examination. We hold that both arguments are procedurally barred and that, even if they were not, Mr. Morrison has not shown that curing the claimed errors would have changed the outcome of his ratings decisions in the early 1980s.

1. To begin with, neither issue is properly before this court. First, as to section 3.655, the CAVC held that Mr. Morrison did not submit a notice of disagreement with regard to the December 1981 decision to discontinue his benefits, but instead merely sought reopening of his case after the discontinuation was effected. Mr. Morrison

argued that his February 1982 letter constituted a notice of disagreement with the decision to discontinue his benefits in December 1981. But the 2009 Board disagreed with that characterization, because the letter was signed and dated August 24, 1981, before the December 1981 suspension of benefits, and it referred to Mr. Morrison's failure to appear for the July 1981 scheduled examination, not the December 1981 scheduled examination. Based on those facts, the CAVC agreed with the Board that the February 1982 letter "does not express disagreement with the December 1981 RO decision" and therefore "the Board in 1984 was not required to address the RO's December 1981 decision."

The CAVC's determination that the February 1982 letter did not constitute a notice of disagreement that gave the Board jurisdiction to review the December 1981 discontinuation decision is, at most, an application of law to fact, and it therefore falls outside our jurisdiction. *See* 38 U.S.C. § 7292(d)(2); *Conway v. Principi*, 353 F.3d 1369, 1372 (Fed. Cir. 2004). Consequently, we are bound by the findings that the section 3.655 issue Mr. Morrison now seeks to raise was not presented as a claim for the 1984 Board to resolve. Because the propriety of the decision discontinuing Mr. Morrison's benefits was not presented to the Board, the Board's 1984 decision did not discuss that claim and cannot be held to be clearly and unmistakably erroneous for not doing so.[1]

---

[1] The dissent contends that we have jurisdiction over the section 3.655 issue because the "interpretation of the 1981 notice of disagreement regulation is a legal issue properly before this court." In fact, neither the VA nor the CAVC interpreted the 1981 regulation governing notices of disagreement. Citing the language of the regulation, the Board found as a matter of fact that the February 1982 letter did not "express[] disagreement or dissatisfac-

Mr. Morrison argues that the 1984 Board was obligated to assess the propriety of the discontinuance—and thus the proper procedure under section 3.655—as part of its overall consideration of the reduction in his rating. In support of that argument, he invokes 38 C.F.R. § 20.1403(a), which provides that a previous Board decision may contain CUE if "the statutory and regulatory provisions extant at the time were incorrectly applied," and he contends that the 1984 Board "erred in failing to apply the law that existed at the time." But Mr. Morrison's failure to file a notice of disagreement as to the discontinuation of benefits meant that there was no challenge to that action before the Board in 1984, so on the record before it the Board cannot be held to have "incorrectly applied" any statutory or regulatory provisions at that

---

tion with [the December 1981] decision"; the Board further found that the letter was dated and signed on August 24, 1981, prior to the issuance of the December 1981 decision and that Mr. Morrison "had not received the December 1981 decision at the time he wrote the [letter]." The CAVC agreed with the Board that the letter "does not express disagreement with the December 1981 RO decision" as it "fails to reference *any* adjudicative action, but rather provides an excuse for missing the July 1981 VA examination." The court added that "[t]he appellant's simple request that his benefits not be reduced based on his failure to report for his *July* VA examination cannot be reasonably construed as a disagreement with the December 1981 RO determination, which suspended his benefits based on his failure to report for this *December* VA examination. . . . The letter's substance simply fails to present disagreement with an adjudicative action." While the dissent does not agree with that conclusion, the dissent's objection is not to the court's interpretation of a regulation, but to its application of that regulation to the particular facts of this case.

time. *See Cook v. Principi*, 318 F.3d 1334, 1343 (Fed. Cir. 2002) (en banc), *quoting Caffrey v. Brown*, 6 Vet. App. 377, 383 (1994) (in order for an error to rise to the level of CUE, the asserted error "must have occurred on the record 'as it existed at the time of the disputed adjudication'"); *Pierce v. Principi*, 240 F.3d 1348, 1354 (Fed. Cir. 2001).

Mr. Morrison's position, in essence, is that the 1984 Board was required to judge the propriety of the discontinuance pursuant to section 3.655, even though in order to do so it would have had to anticipate and rule on a claim that Mr. Morrison never raised in his 1984 appeal. Before the Board in 1984, Mr. Morrison's complaint was squarely focused on the medical merits of the decision to assign him a rating of only 10 percent; he did not make the separate claim that the discontinuance of his benefits was flawed because the regional office failed to find that he lacked an "adequate reason" for missing his medical examinations. We decline to find that the Board committed clear and unmistakable error with regard to the section 3.655 claim when Mr. Morrison did not challenge the discontinuation decision before the Board.

Mr. Morrison gives only passing attention to his second claim, that the Board violated section 3.343 independent of the alleged violation of section 3.655. In any event, however, that claim is barred because Mr. Morrison waived it by not presenting it to the CAVC. Section 3.343 provides that a total disability rating "will not be reduced, in the absence of clear error, without examination showing material improvement in physical or mental condition." The 2009 Board held that the regulation does not apply in the case of a veteran who, like Mr. Morrison, has had his disability benefits discontinued for failure to report for re-examination. Mr. Morrison did not challenge that interpretation of section 3.343 before the CAVC. Instead, his argument before the CAVC was that the Veterans Administration violated section 3.655 by discon-

tinuing his benefits without first making an affirmative finding that he had no adequate explanation for his failure to attend the scheduled physical examinations. His argument under section 3.343 was dependent on that section 3.655 point: He claims that if his benefits had not been unlawfully discontinued, in violation of section 3.655, he would have been entitled to receive a medical examination under section 3.343 before his rating was reduced. Mr. Morrison did not argue that section 3.343 applied even if the discontinuation of benefits was lawful.

Mr. Morrison's failure to press a separate argument based on section 3.343 before the CAVC, notwithstanding that he was represented by counsel, constitutes a waiver of that argument for purposes of the present appeal. *See Andre v. Principi*, 301 F.3d 1354, 1363 (Fed. Cir. 2002). Thus, Mr. Morrison's arguments before this court are procedurally defective because he did not preserve his section 3.655 claim before the Board in his 1984 appeal, and he did not preserve a separate section 3.343 claim before the CAVC in the present appeal.

2. Apart from those procedural grounds, there is another problem with Mr. Morrison's CUE claim. Although he contends that he was prejudiced by the application of section 3.655 in his case, the relief he requests is for the court to hold that pursuant to section 3.343 he was entitled to a physical examination and a finding of material improvement before his rating was reduced. Yet a medical examination was promptly scheduled and held in his case after he contacted the Veterans Administration in January 1982, and a second examination was held in 1983. The upshot of those examinations was that his rating was reduced to 10 percent, retroactive to January 1, 1982.

Mr. Morrison has not given us any reason to believe that the outcome of his medical examinations would have been any different if the regional office had not discontin-

ued Mr. Morrison's benefits in January 1982 and had conducted the medical examinations pursuant to section 3.343, rather than pursuant to his request to reopen his claim. Following both the 1982 and 1983 examinations, the examining physician found "no objective evidence of disability" and "little objective physical findings to substantiate a diagnosis of post concussion syndrome." Although the examination that was conducted 14 years later, in 1997, resulted in a diagnosis of a serious seizure-like condition, there is no reason to believe that examinations in 1982 or 1983 would have produced a different result if they had been conducted under section 3.343 rather than under section 3.655. There is thus no indication in the record that a different interpretation of section 3.655 would have had the effect of avoiding the reduction in Mr. Morrison's rating that occurred in 1983.

It is well settled that one of the required elements of a CUE claim is that the veteran must show that if the claimed error had not been made, it would have manifestly changed the outcome of the case. 20 C.F.R. § 20.1403(a); *Cook*, 318 F.3d at 1343. Mr. Morrison has not made such a showing here, i.e., that he would not have suffered the reduction in his rating that followed his 1982 and 1983 medical examinations.[2] We therefore reject his

---

[2] The dissent argues that Mr. Morrison was prejudiced by the fact that his examination was conducted after his benefits were discontinued, because he was required to show service connection, which he would not have been required to show if his benefits had been ongoing at the time of his 1982 examination. What that overlooks is that service connection was never an issue in Mr. Morrison's case: his condition was regarded as service connected throughout. What was at issue was the severity of his disability, and neither Mr. Morrison nor the dissent has offered any reason to believe that the medical conclusions as to the substantial reduction in the severity

claim that the Board in 1984 committed clear and unmis-takable error in denying his challenge to the regional office's 1983 disability rating.

No costs.

**AFFIRMED**

---

of his disability would have been different if he had been receiving benefits at the time of his 1982 examination. Moreover, in the context of a CUE claim, the claimant must show that the error is "undebatable" and "the sort which, had it not been made, would have manifestly changed the outcome at the time it was made." *Morris v. Shinseki*, 678 F.3d 1346, 1351 (Fed. Cir. 2012). It is not enough to conclude, as the dissent does, that the VA's findings that Mr. Morrison was entitled to only a 10 percent disability rating "do not necessarily meet the material improvement standard."

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**FRANKLYN E. MORRISON,**

*Claimant-Appellant,*

**v.**

**Eric K. Shinseki, SECRETARY OF VETERANS AFFAIRS,**

*Respondent-Appellee.*

---

2012-7109

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 09-4268, Judge William A. Moorman.

---

REYNA, *Circuit Judge*, dissenting.

The majority concludes that Mr. Morrison's arguments are procedurally barred on the basis that he failed to file a notice of disagreement with the regional office's December 1981 decision to discontinue his benefits. I find no procedural bar in this case. Mr. Morrison's January 14, 1982 letter to the Department of Veterans Affairs (VA) on its face shows that he disagreed with the VA's action, a statement that raises his 38 C.F.R. § 3.655 arguments properly before this court. Mr. Morrison also preserved his 38 C.F.R. § 3.343 arguments by making them in his

recent appeal to the Court of Appeals for Veterans Claims. For these and other reasons I set out below, I respectfully *dissent*.

The majority bars Mr. Morrison's argument that the 1984 Board committed clear and unmistakable (CUE) error when it discontinued his benefits without considering the adequacy of his reasons for missing his examination after concluding that Mr. Morrison never filed a notice of disagreement with the December 1981 decision. My colleagues suggest that a letter from Mr. Morrison dated August 24, 1981 "merely sought reopening of his case after the discontinuation was effected." Maj. Op. 6. Treating Mr. Morrison's letter as a request to reopen his case, as the VA did, overlooks the date the letter was actually received by the VA and the clear statement that the VA not stop his compensation benefits. Under the regulations, Mr. Morrison's August 24, 1981 letter is a notice of disagreement, not a request to reopen his case as the VA erroneously concluded.

The 1981 regulation defining a notice of disagreement simply requires:

> A written communication from a claimant or his representative expressing *dissatisfaction or disagreement* with an adjudicative determination of an agency of original jurisdiction. The notice should be in terms which can be reasonably construed as evidencing *a desire for review* of that determination. *It need not be couched in specific language.* Specific allegations of error of fact or law are not required.

38 C.F.R. § 19.113 (1981) (emphases added). A notice of disagreement is "the claimant's *notification* to the [VA] that he is challenging the regional office's decision . . . by appealing it to the Board of Veterans Appeals." *Hartman v. Nicholson*, 483 F.3d 1311, 1314–15 (Fed. Cir. 2007) (emphasis added). It "initiates board review of a determi-

nation of an agency of original jurisdiction," *Burton v. Derwinski*, 933 F.2d 988, 989 (Fed. Cir. 1991) (citing 38 U.S.C. § 4005), but does not serve as the notice of appeal itself. Instead, the VA first attempts to resolve the disagreement, but if unsuccessful, it issues a statement of the case. 38 C.F.R. § 19.114(a), (b). The veteran then has the option to perfect a substantive appeal upon receipt of the statement of the case. *Id.* § 19.116. Thus, the notice of disagreement merely provides notice of the veteran's disagreement without any particular format or degree of specificity being required; what matters is that the notice is filed with the VA within the statutory window. *See Rodriguez v. Shinseki*, 455 Fed. App'x 994, 998 (Fed. Cir. 2012) (citing *Rivera v. Shinseki*, 654 F.3d 1377, 1381 (Fed. Cir. 2011)).

Mr. Morrison's letter to the VA qualifies as a notice of disagreement under these regulations. The letter is signed by Mr. Morrison and dated August 24, 1981, but the VA received the letter on January 14, 1982—within one year of its December 1981 decision. It identifies his address as Avila Beach, CA and instructs the VA to "[p]lease note my correct address as given below." Joint App'x 65. In addition, Mr. Morrison asked the VA to "not stop [his] compensation as [he] need[ed] the income." *Id.*

The majority appears to assume that the letter was sent on or about August 1981. A reasonable conclusion is that Mr. Morrison did not send his letter in August 1981, but instead sent it after his benefits were discontinued on December 22, 1981 as the circumstances suggest.[1]

---

[1]    It is unreasonable to assume that the letter was sent on or after August 24, and received by VA on or after January 14, 1982. Such an interpretation would require serious skepticism of the operations of either the U.S. Post Office or the VA. I am unwilling to subscribe to this interpretation in this case given that the VA benefits from

The request to "not stop my compensation as I need the income" is a clear disagreement with a determination discontinuing compensation. Since the regulations do not require a notice of disagreement to be couched in specific language, Mr. Morrison's objection to the halt of his compensation satisfies the requirement of a notice of disagreement under the regulations. § 19.113; *see Collaro v. West*, 136 F.3d 1304, 1309 (Fed. Cir. 1998) (concluding that the veteran raised constitutional and statutory issues even though the VA only resolved factual issues in response to a vague notice of disagreement); *Comer v. Peake*, 552 F.3d 1362, 1368 (Fed. Cir. 2009) (holding that the VA is obligated to read appeal filings in a liberal manner).

In my view, *Comer* controls this case. In that case, the veteran, who was acting *pro se* at that time, appealed a VA decision that granted him an increased post-traumatic stress disorder (PTSD) disability rating and a total disability based on individual unemployability (TDIU) award, but only sought an early effective date for the PTSD disability rating. Even though the veteran was represented by counsel in his later CUE claim for an earlier effective date for his TDIU award, this court nevertheless held that he was entitled to a sympathetic reading of his earlier notice of disagreement filing and refused to find waiver. Indeed, it concluded that "the VA's

---

the presumption of regularity in related circumstances. *See Miley v. Principi*, 366 F.3d 1343, 1347 (Fed. Cir. 2004) ("The presumption of regularity provides that, in the absence of clear evidence to the contrary, the court will presume that public officers have properly discharged their official duties."). Mishandling by the VA in this case would not be unexpected considering that Mr. Morrison's letter has no less than three dates stamped on it, including January 14, 1982, February 1, 1982, and February 3, 1982. Joint App'x 65–66.

duty to read an appeal submission sympathetically to ascertain all potential claims it contains is antecedent to its duty to ensure that an issue has been properly raised on appeal." *Comer*, 552 F.3d at 1368. In doing so, the court emphasized that in proceedings before the Board, "the relationship between the veteran and the government is non-adversarial and pro-claimant." *Id.* The majority's decision to harshly apply the notice of disagreement requirement is contrary to congressional purpose behind the veterans' benefits system. *See Jaquay v. Principi*, 304 F.3d 1276, 1280 (Fed. Cir. 2002) ("Congress's paternalistic veterans' benefits system care[s] for those who served their country in uniform."). Similarly, the VA's decision to disregard Mr. Morrison's notice of disagreement contravenes its regulations and constitutes legal error. I conclude that Mr. Morrison's letter satisfies the regulations as a notice of disagreement with the VA's December 22, 1981 decision to discontinue his benefits.[2]

The Court of Appeals for Veterans Claims compounded its error by failing to address Mr. Morrison's substantive argument concerning discontinuance. Specifically, Mr. Morrison argued that pursuant § 3.655, the VA could not discontinue his benefits without first determining that he lacked adequate reasons for failing to report to his VA examination. Rather than addressing this argument, the Court of Appeals for Veterans Claims cites cases to justify its requirement that Mr. Morrison establish that his was the "only and correct" interpretation of the law. *Morrison v. Shinseki*, No. 09-4268, 2012 U.S. App. Vet. Claims

---

[2] The majority suggests that our limited subject matter jurisdiction precludes us from concluding that Mr. Morrison's letter was a notice of disagreement. *See* Maj. Op. 7 (citing 38 U.S.C. § 7292(d)(2)). I agree with Mr. Morrison that the VA's interpretation of the 1981 notice of disagreement regulation is a legal issue properly before this court.

LEXIS 299, at *17 (Vet. App. Feb. 27, 2012) (citing *Hilkert v. West*, 12 Vet. App. 145, 151 (1999) (en banc) ("An appellant bears the burden of persuasion on appeals to this Court."), *aff'd*, 232 F.3d 908 (Fed. Cir. 2000) (per curiam) (table); *Berger v. Brown*, 10 Vet. App. 166, 169 (1997) ("[T]he appellant . . . always bears the burden of persuasion on appeals to this Court.")). But the cases cited by the Court of Appeals for Veterans Claims stand for the unremarkable proposition that a veteran bears the burden of persuasion on factual issues, not on establishing that his interpretation of the law is the only and correct one. Such a requirement imposes an exacting and unreasonable standard—one that is not recognized by this court or the Court of Appeals for Veterans Claims, precisely because it is contrary to the uniquely pro-claimant scheme Congress established for handling veterans' claims. *See Barrett v. Nicholson*, 466 F.3d 1038, 1044 (Fed. Cir. 2006); *Hodge v. West*, 155 F.3d 1356, 1362–64 (Fed. Cir. 1998).

In addition, the Court of Appeals for Veterans Claims committed error in its refusal "to speculate as to what the law meant at the time." *Morrison*, 2012 U.S. App. Vet. Claims LEXIS 299, at *17. When the meaning of a statute is involved, statutory interpretation is not speculation or optional. It is a process that courts are obligated to undertake. The Court of Appeals for Veterans Claims refusal to interpret the law that was in effect in 1981 constitutes legal error. *See* 38 U.S.C. § 7261(a)(1). On this point alone, I would vacate and require the court on remand to determine the whether § 3.655 as codified in 1981 required an adequate reason determination and, if so, whether the facts establish an adequate reason for Mr. Morrison to miss his December 1981 examination.[3]

---

[3]    The VA inconsistently concluded that Mr. Morrison had an adequate reason for missing his May and July 1981 examinations, but not his December 1981 examina-

Finally, I disagree with the majority's conclusion that Mr. Morrison's § 3.343 arguments are procedurally barred. The majority is incorrect that Mr. Morrison never presented his § 3.343 argument to the Court of Appeals for Veterans Claims. The record shows that Mr. Morrison argued that absent an adequate reason determination, the VA "was required to follow the rules for reducing a grant." Joint App'x 124 (citing 38 C.F.R. § 3.343(a) (1981)). He further asserted that had the VA correctly applied the regulation, the VA "ultimately would have assessed the case under the standard contained in § 3.343 (material improvement based on 'all the facts of record' with consideration given 'to whether the veteran attained improvement under the ordinary conditions of life')." Joint App'x 126. The Court of Appeals for Veterans Claims recognized as much. *Morrison*, 2012 U.S. App. Vet. Claims LEXIS 299, at 16 ("[Mr. Morrison] argues that the Board instead was required to follow the rule on reduction of ratings under 38 C.F.R. §§ 3.105, 3.343 (1981)."). Thus, while the majority is correct that Mr. Morrison did not challenge the Board's holding that § 3.343 does not apply to a veteran who properly has his disability benefits discontinued, Mr. Morrison did preserve his argument that had his benefits not been improperly discontinued under § 3.655, the VA could not properly have reduced his rating from 100% to 0% (even-

---

tion. *See* Joint App'x 51–54. The notices for the May and July examinations were sent to Newhall, CA after Mr. Morrison's address was changed to that location even though he was still residing in Eureka, CA. Similarly, the notice for the December examination was sent to Fairbanks, AK after the VA changed Mr. Morrison's address to that location even though Mr. Morrison notified that VA at least as early as October 13, 1981 that he was living in Avila Beach, CA. Remand would give the VA an opportunity to address the inconsistent outcomes between these otherwise consistent circumstances.

tually 10%) without complying with § 3.343(a). The majority errs in requiring Mr. Morrison to press a separate argument based on § 3.343 when he unquestionably argued § 3.343 in conjunction with his § 3.655 argument.

The majority concludes that there is no reason to believe Mr. Morrison's evaluation would have had a different result whether conducted under § 3.343 instead of § 3.655. Once § 3.655 was applied, Mr. Morrison was effectively required to start from scratch, meaning he had to establish service connection. *See* 38 U.S.C. § 5107(a). On the contrary, had Mr. Morrison been able to show that he had an adequate reason for missing his examination, his benefits could have been reduced only upon a showing of material improvement. 38 C.F.R. § 3.343(a) (1981). The VA's findings of "no objective evidence of disability" and "little objective physical findings to substantiate a diagnosis of post concussion syndrome" do not necessarily meet the material improvement standard. It remains that the claimed error could have manifestly changed the outcome of the case. *See* 38 C.F.R. § 20.1403(a). From the majority's contrary conclusions, I respectfully *dissent*.